FILED & ENTERED

AUG 16 2016

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY kaaumoan DEPUTY CLERK

NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA—LOS ANGELES DIVISION

In re:

JAMES A KRAGE,

Debtor(s).

Case No.: 2:12-bk-17916-WB

CHAPTER 13

**MEMORANDUM DECISION**

Date:        July 20, 2016
Time:       1:30 p.m.
Courtroom: 1375

On March 5, 2012, debtor James Arthur Krage ("Debtor") filed this chapter 13 case. On July 20, 2016 at the continued plan confirmation hearing, Nancy Curry, chapter 13 trustee (the "Trustee"), objected to the amended chapter 13 plan filed by Debtor on the basis that it is not feasible pursuant to 11 U.S.C. § 1325(a)(6). During the more than four years that this bankruptcy case has been pending there has been no confirmable plan. For the reasons explained below, the Court will deny confirmation and dismiss Debtor's chapter 13 case on the ground that the amended plan is not feasible.

*A. Background*

Debtor's bankruptcy schedules show that, at the time he filed his chapter 13 petition, he had approximately $1,718.00 in general unsecured debts. Debtor listed creditors the Internal Revenue Service (the "IRS") and the California Franchise Tax Board (the "FTB") as holding

unsecured priority and nonpriority claims in unknown amounts. Debtor did not list any creditors as holding secured claims. Debtor owned a 20% interest in his residence in Lakewood, California that he valued at $300,000.00 (the "Property"). The Property was subject to a deed of trust in favor of Deutsche Bank National Trust Company ("DB") securing a debt in the amount of $493,669.51 as provided in proof of claim, Claim No. 3, filed by its authorized agent OneWest Bank, FSB ("OneWest"). During the case, the IRS and the FTB also filed proofs of claims.

On March 29, 2012, Debtor filed a chapter 13 plan. Debtor's original proposed plan provided for 60 monthly payments to the Trustee in the sum of $50.00 with 100% dividend to the unsecured creditors. The plan made no provision for the secured claim of DB but provided that Debtor would file an adversary proceeding with respect to the Property to quiet title against an alleged downstream assignee of the mortgage lender. The IRS and FTB were not acknowledged or otherwise mentioned in the plan provisions, either as secured or unsecured creditors.

On May 13, 2012, the IRS filed a proof of claim for unpaid federal taxes, Claim No. 1, in the amount of $431,915.56; of that amount, $352,789.80 is a secured claim and $77,469.77 is unsecured. On November 5, 2012, Debtor instituted an adversary proceeding[1] objecting to Claim No. 1 and for a determination of the amount of federal taxes owed. Over the next two years, Debtor attempted to resolve his problem with the IRS regarding its proof of claim, which Debtor contended was grossly excessive. The IRS filed several amended proofs of claims, and the parties eventually stipulated to the amount of tax, interest and penalties stated owed in the amended Claim No. 1-9—$139,026.04 as a general unsecured claim—filed on October 9, 2015.

On June 13, 2012, the FTB filed proofs of claims, Claims Nos. 4, 5 and 6, related to outstanding state income tax liability. On November 5, 2012, Debtor instituted an adversary proceeding[2] objecting to Claim Nos. 4, 5 and 6 and for a determination of the amount of state taxes owed. The FTB filed amended proofs of claims reducing the amounts. After more than three years during which time Debtor provided information to the FTB and the parties negotiated

---

[1] The adversary case is styled *Krage v. Internal Revenue Service*, adversary case no. 2:12-ap-02438.

[2] The adversary case is styled *Krage v. Franchise Tax Board*, adversary case no. 2:12-ap-02439.

a partial resolution, the matter eventually went to trial regarding the unresolved portions of the claim for penalties and penalty interest. On July 15, 2016, the Court issued its Memorandum of Decision, overruling all of Debtor's objections to the penalties and interest due on penalties assessed by the FTB. Further, the Court overruled Debtor's objections to the validity of the FTB's state tax liens. The Court affirmed the amount of Claim No. 4-2 is $18,478.25; of that amount, $13,977.22 is a secured claim and $4,501.03 is unsecured. The Court affirmed the amount of Claim No. 5-2 is $23,255.28; of which $20,554.35 is a secured claim and $2,700.93 is unsecured. The total amount of Claim No. 6-4 is shown to be $0.0 (zero). Thus, the Court overruled Debtor's objection to Claim No. 6-4 as moot.

On November 8, 2012, Debtor filed a Motion to Disallow Claim No. 3, challenging OneWest's standing and the assignments of the note and deed of trust under California law, among other objections. Claim No. 3 lists the total amount due as $493,669.51 with arrearages of $121,375.91. The Court held several hearings on the objections to the claim. In its May 30, 2014 Memorandum of Decision, the Court overruled Debtor's objections to the validity of the claim. Debtor filed a Motion to Reconsider the Order Denying Motion to Disallow Claim No. 3 which was denied following a hearing on the motion.

On June 21, 2016, Debtor filed an adversary proceeding[3] seeking again to disallow Claim No. 3. This time, Debtor alleges three claims: (1) defendants' failure to provide to the original borrower the Notice of Right to Cancel with correct dates as required by the Truth in Lending Act ("TILA"), for which he claims statutory damages; (2) defendants' failure to honor Debtor's June 26, 2015 notice of rescission, for which he claims statutory damages; and (3) the right to rescind for which Debtor seeks an order of rescission.

On June 17, 2016, Debtor filed an amended chapter 13 plan ("Amended Plan"). Debtor's Amended Plan now provides for 36 monthly payments to the Trustee in the sum of $54.00 and specifies a dividend of 0.012% for non-priority unsecured creditors. The Amended Plan provides no treatment for the secured claim of DB but now provides that the "mortgage [on the

---

[3] The adversary case is styled *Krage vs. OneWest Bank, FSB et al.*, adversary case no. 2:16-ap-01283-WB.

Property was] [r]escinded under TILA on June 10, 2015." Amended Plan at 7 (Docket No. 259). The Amended Plan provides no treatment for the FTB's allowed secured and unsecured claims.

On July 20, 2016, the Court held a continued confirmation hearing. At the confirmation hearing, the Trustee objected to Debtor's Amended Plan on the ground that the claims of the FTB and DB render the plan unfeasible pursuant to 11 U.S.C. § 1325(a)(6). Debtor stated at the hearing that the DB secured claim should not be paid because Debtor rescinded the note. Debtor also sought the right to further amend the plan, if necessary. This case has been pending since March 5, 2012, so less than 6 months remain on the original 60 month term. If the term specified in the Amended Plan of 36 months is used, the plan term has expired.

*B. Discussion*

It is well established that for a bankruptcy court to confirm a plan, "each of the requirements of section 1325 must be present and the debtor has the burden of proving that each element has been met." *In re Barnes,* 32 F.3d 405, 407 (9th Cir. 1994). Section 1325(a)(1) requires confirmation of a plan if "the plan complies with the provisions of this chapter and with the other applicable provisions of this title." 11 U.S.C. § 1325(a)(1). Here, the Court's inquiry is focused on whether Debtor will be able to make all payments required under the Amended Plan. Section 1325(a)(6) requires that the court determine whether "the debtor will be able to make all payments under the plan and to comply with the plan." 11 U.S.C. § 1325(a)(6). "The Debtor, as the chapter 13 plan proponent, has the burden of proof on all elements of plan confirmation." *Meyer v. Hill (In re Hill),* 268 B.R. 548, 552 (9th Cir. BAP 2001); *In re Gavia*, 24 B.R. 573, 574 (9th Cir. BAP 1982). Therefore, Debtor bears the burden of providing admissible evidence to prove that his plan is feasible. *Id.; see also Tillman v. Lombard,* 156 B.R. 156, 158 (E.D. Va. 1993) ("A definite declaration as to the source and the amount of funds necessary to enable the debtor to make the plan payments is required."). If the plan is too speculative, the court should deny confirmation on the basis that the plan is not feasible. *In re Reines,* 30 B.R. 555, 561 (Bankr. D.N.J. 1983).

Section 1322 of the Bankruptcy Code sets forth what is required and what is permissible in a confirmable plan of reorganization. 11 U.S.C. § 1322. The treatment of an allowed secured claim is dictated by the Code, which both protects lienholders' rights and empowers chapter 13 debtors to "provide for" and manage liens through the plan. *See In re Smith,* 435 B.R. 637, 644 (9th Cir. BAP 2010); 11 U.S.C. §§ 1322, 1325(a)(5). "With respect to secured creditors, § 1325(a)(5) requires generally that a chapter 13 plan must provide one of three alternative treatments:" first, the holder of such claim accepts the plan; second, the secured claim is paid according to the provisions of § 1325(a)(5)(B)[4]; or third, the debtor surrenders such property securing the claim. *In re Smith,* 435 B.R. at 644 (citing *In re Trejos,* 374 B.R. 210, 214 (9th Cir. BAP 2007)); 11 U.S.C. § 1325(a)(5). Further, a chapter 13 plan cannot be premised on the successful litigation of a claim. *Ewald v. Nat'l City Mortgage Co. (In re Ewald),* 298 B.R. 76 (Bankr. E.D. Va. 2002) (§ 1325(a)(6) not satisfied where plan depends on favorable outcome in three-year-old lawsuit and debtor presented no evidence of a reasonable likelihood of success in that litigation); *In re Reines,* 30 B.R. 555 (Bankr. D.N.J. 1983) (plan predicated in part upon "highly speculative return from a lawsuit" which the trustee declined to pursue not feasible).

Here, the Trustee has objected to confirmation on the ground that the Amended Plan does not provide for the DB secured claim or the claims of the FTB, among other grounds. Debtor contends that the Amended Plan is confirmable notwithstanding the failure to provide for the DB secured claim because Debtor has rescinded the note and underlying obligation. This is the basis for Debtor's newly filed adversary proceeding. Debtor has presented no evidence that he is likely to succeed on this claim. Further, an analysis of Debtor's complaint demonstrates that, as a matter of law, he cannot succeed. The Court notes that Debtor has been long involved in litigation with OneWest in this Court resulting in various rulings from this Court overruling Debtor's objections to the DB secured claim. In Debtor's latest adversary proceeding, Debtor asserts that he is entitled to rescind the note because his deceased mother-in-law, the original borrower, did not receive the required TILA notices. The complaint alleges that Debtor's

---

[4] To comply with § 1325(a)(5)(B) the plan must provide that the creditor retain its lien and receive the present value of its allowed secured claim.

deceased mother-in-law was the sole borrower of the loan at its origination, which she subsequently refinanced in February 2006 with defendants or their predecessors thereof, and that Debtor was granted a partial interest in the Property by a grant deed recorded on November 10, 2004. The complaint does not allege that Debtor received any loan proceeds either during its origination or at the time of refinancing. Assuming that Debtor's allegations are true, Debtor has no standing to request rescission or damages under TILA because he was not a party to the loan transaction and therefore is not an "obligor" or "consumer" with the right to rescind under TILA. *See Johnson v. First Fed. Bank of Cal.,* 2008 WL 2705090, at *5 (N.D. Cal. Jul. 8, 2008) (holding a party who was not named in the loan papers was not a "consumer" under TILA and therefore had no standing to bring a TILA claim).

Even if Debtor were to have standing to bring his TILA claim, Debtor's rescission claim is untimely. In a consumer credit transaction where the creditor acquires a security interest in the borrower's principal dwelling, TILA provides the borrower with "a three-day cooling-off period within which [he or she] may, for any reason or for no reason, rescind" the transaction. *McKenna v. First Horizon Home Loan Corp.,* 475 F.3d 418, 421 (1st Cir. 2007) (citing 15 U.S.C. § 1635). If a creditor fails to provide the borrower with the required notice of the right to rescind, the borrower has three years from the date of consummation to rescind the transaction. *Id.* § 1635(f); 12 C.F.R. § 226.23(a)(3) ("If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation."). However, because Debtor filed his complaint over three years from the date on which the loan refinance transaction was consummated, the Court is without jurisdiction to consider his claim for rescission under TILA. *Miguel v. Country Funding Corp.,* 309 F.3d 1161, 1164 (9th Cir. 2002). Accordingly, Debtor's rescission claim is time barred.

Debtor, therefore, cannot show that he will have no liability on the DB secured claim. The Amended Plan provides that the secured creditor will be paid according to the proof of claim filed by the creditor. Here, the DB secured claim provides a total amount due of $493,669.51 with arrearages of $121,375.91. Debtor is required to pay the arrears during the plan term and to make the current payment due on the note. Debtor's Amended Schedule J filed on May 3, 2016

shows $52 monthly net income available for plan payments from Debtor's and his spouse's combined incomes. Moreover, the IRS tax refund mailed to the Trustee's Office in the amount of $8,102.31 is insufficient to fund the indebtedness in Debtor's Amended Plan. *See* Status Report (Docket No. 262). Based on Debtor's net income and the IRS tax refund, and taking into account that there is less than 6 months remaining on the original 60 month plan term and no time remaining on the 36 month term proposed in the Amended Plan, the Amended Plan is not feasible. The Court finds that Debtor would be unable to amend the plan to provide for the DB secured claim or to provide for the secured portions of the FTB claims, which also have not been included. In short, the Amended Plan is not feasible and the Court cannot see any amendment that Debtor could make that would make it so.

Under Section 1307(c), a court may dismiss or convert a chapter 13 case to case under chapter 7 for any of the reasons set forth in that section. 11 U.S.C. § 1307(c)(1)-(11). This list is "not exhaustive," but exemplary. 8 Collier on Bankruptcy ¶ 1307.04 & n. 33 (16th ed. rev. 2016) (noting the use of the term "including"). Section 1307(c)(5) provides that a court may dismiss or convert a chapter 13 case in the event of "denial of confirmation of a plan under [11 U.S.C. § 1325] and denial of a request made for additional time for filing another plan or a modification of a plan." 11 U.S.C. § 1307(c)(5). For the reasons set forth above, there is cause to dismiss Debtor's case under subsection (c)(5).

//
//
//
//
//
//
//

For all the foregoing reasons, confirmation of Debtor's proposed Amended Plan is denied, Debtor's request for additional time to file an amended plan is denied and the case is dismissed.

A separate order will be entered consistent with this memorandum of decision.

###

Date: August 16, 2016

*Julia W. Brand*
Julia W. Brand
United States Bankruptcy Judge